Morris Polackoff, complainant-appellant,

*v.*

Max Sunkin, defendant-respondent.

[Decided January 5th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The complainant, a dealer in malt, hops and malt products, has two places of business, one at 17 Bloomfield avenue, Newark, and the other at 100 Hudson street, Hoboken, at both of which he uses the trade name 'New Jersey Malt Products Co.' He claims to be the sole owner of two labels or brands, one called 'Lion' and he other 'Canadian Club,' which he uses on merchandise sold at his stores. The defendant is engaged in the same line of business at 3 Webster

street, Newark, which is nearly opposite the complainant's Newark store. He trades under the name of 'New Jersey Malt Supply' and on some of the merchandise he sells, he uses 'Lion' and 'Canadian Club' labels similar in color and design to those used by complainant. The complainant claims priority in the use of his trade name and he alleges that the trade name used by defendant is so similar as to lead to confusion in the minds of those who wish to deal with complainant and results in loss of trade and damage to complainant. He seeks to have defendant restrained from using said labels and the trade name 'New Jersey Malt Supply.' The defendant claims an equal right with complainant to the use of the labels or brands in question and priority over the complainant in the use of his trade name and by counter-claim he prays restraint against complainant from using the trade name 'New Jersey Malt Products Co.'

"On July 22d, 1921, the complainant and one Lewis were partners in business in Newark, for the sale of malt, hops and malt products under the trade name 'Newark Malt Products Co.' They operated two stores, one at 79½ Bloomfield avenue and the other on Orange street, near Norfolk street, and they used the 'Lion' and 'Canadian Club' labels on the goods they sold. Their business did not pay and ran but a few months, when the partnership was dissolved. The complainant claims he bought out Lewis' interest but I do not believe that to be a fact, because there was no bill of sale, or any written evidence of such payment and also because Lewis, who was a witness for complainant, testified that the partnership just 'broke up' and that the assets were divided between the partners, the complainant taking one-half of the goods bearing said labels and Lewis the other half thereof, and that they divided between them such of said labels as was not pasted on cans. I believe that on the dissolution of said partnership the former partners had equal ownership in said labels and in their use. The evidence shows that they exercised such equal ownership immediately, without molestation one by the other. Upon dissolution of the partnership the Bloomfield avenue store was discontinued and the complainant continued

at the Orange street store, using the two labels in connection with goods sold there, for six months, when he sold that store and opened another at 100 Hudson street, Hoboken, which he still maintains and where he uses said labels. A day or two after partnership between complainant and Lewis was dissolved, Lewis opened a store at 3 Webster street, Newark (which is the store now operated by defendant), under the old name 'Newark Malt Products Co.,' and there sold the same line of goods, using thereon the two labels mentioned, until July 1st, 1922, when he sold the business, including labels, caps, malt and other supplies on hand to one Di Filippis, who thereupon changed the trade name to 'New Jersey Malt Supply' and continued the business at the Webster street store about seven years, all the time using the new trade name and 'Lion' and 'Canadian Club' labels on the goods sold by him, and according to complainant's witness, Thompson, complainant knew in 1928 that Di Filippis was making use of the labels. Di Filippis resold the business and stock on hand sometime in 1928 to Lewis, who, with a man named Wilson, operated the same business at the Webster street store, retaining the name 'New Jersey Malt Supply,' and using said labels on the goods they sold, until December 10th, 1928, when the defendant bought the business and stock in trade from Lewis and Wilson by bill of sale which, in terms, includes the good will of the business. From that time the defendant, to complainant's knowledge, used the 'Lion' and 'Canadian Club' labels on the goods he sold and he used the name 'New Jersey Malt Supply' on goods, labels (see Schedule C annexed to the bill of complaint) and handbills and was billed under that name by wholesalers with whom he dealt. Thus Lewis and all those who followed him (including defendant) in the occupancy of the Webster street store, used said brands and labels for ten years without hindrance from complainant. I think complainant and defendant now have equal rights in such labels and that complainant's prayer to restrain defendant in such use must be denied.

"Lewis used the trade name 'Newark Malt Products Co.' in connection with the business he conducted after the disso-

lution of his partnership with complainant and until he sold the business to Di Filippis. What trade name the complainant used at the Orange street store after the dissolution of the partnership, does not appear, but when he ceased to operate a store in Newark early in the year 1922 and opened a store in Hoboken, he there used the trade name 'New Jersey Malt & Hops Co.,' and he used that same trade name in connection with a store he operated for a short time in 1928-1929 on Springfield avenue, Newark. He says he found such trade name too long and decided to change it to 'New Jersey Malt Products Co.' He first indicated an intention to change that name in May, 1929, while running only the Hoboken store, by filing a certificate of such trade name in the Hudson county clerk's office, but nevertheless it appears by a bill for supplies sold by him at his Hoboken store under date of August 1st, 1929, that he was still using the name 'New Jersey Malt & Hops Co.' He turned his Springfield avenue store over to his son in 1929 (probably about November 15th) and opened this present store at 17 Bloomfield avenue, Newark, November 15th, 1929, and proceeded to do business there as 'New Jersey Malt Products Co.' From the time Di Filippis took over the Webster street store in July, 1922, then adopting the trade name 'New Jersey Malt Supply,' Di Filippis and those who succeeded him at said store, including defendant, did business under the last named trade name for nearly eight years before complainant first evidenced his intention to use the trade name 'New Jersey Malt Products Co.' In fact defendant was using the 'New Jersey Malt Supply' name from December 10th, 1928, which was six months before the complainant filed his trade name with the Hudson county clerk and nearly a year before complainant opened his present Newark store. The complainant urges that because the defendant did not display his trade name on the exterior of this store until August, 1931, or use it in newspaper or telephone book advertising, he is not now entitled to the use of such name. I consider such objection immaterial because the proofs show that from the time defendant first occupied his store, he used his trade name continuously, on his merchandise, labels and

handbills and that his supply men dealt with him under that trade name. The evidence satisfies me that defendant's use of his trade name was prior to complainant's use of his trade name and I am also satisfied that the names are so similar as to cause confusion in the mind of the public and with supply houses with whom defendant must deal. In fact the complainant testified that the similarity in names had lead to confusion and he cited instances. When a trade name has acquired significance in the mind of the public who understand it as a designation or symbol applying to one's business, equity will relieve against the subsequent use by another of a name so similar as to confuse and mislead the public, to the first user's injury. *Amos H. Van Horn, Ltd.*, v. *Coogan, 52 N. J. Eq. 380; affirmed, Ibid. 588; International Silver Co.* v. *Wm. H. Rogers Corp., 66 N. J. Eq. 119; affirmed, 67 N. J. Eq. 646; Cape May Yacht Club* v. *Cape May Yacht and Country Club, 81 N. J. Eq. 454; Evening Journal Association* v. *Jersey Publishing Co., 96 N. J. Eq. 54; Safety Storage Co.* v. *Lupenski, 100 N. J. Eq. 385; Smyth Sales Co.* v. *Kaveny, 109 N. J. Eq. 138.*

"It is not necessary that one using a trade name which interferes with another's prior right, should have adopted such name with intent to deceive the public or to injure that other. The consequences of complainant's act and not the motive for it, determines whether this court should interfere to protect defendant in the custom, patronage and standing with the trade which he has built up by the use of his trade name. *Wirtz* v. *Eagle Bottling Co., 50 N. J. Eq. 164; Amos H. Van Horn, Ltd.*, v. *Coogan, supra; International Silver Co.* v. *Wm. H. Rogers Corp., 67 N. J. Eq. 646; O'Grady* v. *McDonald, 72 N. J. Eq. 805; Rubber & Celluloid Harness Manufacturing Co.* v. *Rubber Bound Brush Co., 81 N. J. Eq. 419; affirmed, Ibid. 519; Cape May Yacht Club* v. *Cape May Yacht and Country Club, supra; Hilton* v. *Hilton, 89 N. J. Eq. 149; Hilton* v. *Hilton, 90 N. J. Eq. 564; Evening Journal Association* v. *Jersey Publishing Co., supra; Smyth Sales Co.* v. *Kaveny, supra.*

"Because it appears to me that the name which complain-

ant is using is so similar to defendant's trade name as to create a false impression in the mind of the ordinary man exercising the caution usually exercised in such cases, and because it appears that persons have been deceived by the similarity in names, I conclude that the defendant's use of his trade name prior, in point of time, to the use by complainant of his trade name, should be protected by this court. Not only should complainant be restrained from using his trade name in connection with his Newark store, but also in connection with his Hoboken store, because complainant has testified that during the time he had no Newark store and operated from his Hoboken store alone, he built up a Newark trade, supplying his customers from his Hoboken store. The complainant should not be permitted to operate his Hoboken store under a trade name which may deceive the public into believing they are dealing with defendant and solicit and obtain orders from the Newark trade which may be filled from his Hoboken store. *Blue Goose Auto Service, Inc.,* v. *Blue Goose Super Service Station, Inc., 110 N. J. Eq. 547, 552.*"

*Mr. Edward R. McGlynn,* for the appellant.

*Mr. Alexander T. Schenck,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion of Vice-Chancellor Fielder in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.